GARY M. RESTAINO
United States Attorney
District of Arizona

DIMITRA H. SAMPSON
Arizona State Bar No. 019133
Email: dimitra.sampson@usdoj.gov
JILLIAN BESANCON
California State Bar No. 285869
Email: jillian.besancon@usdoj.gov
RYAN POWELL
Arizona State Bar No. 025695
Email: ryan.powell@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

☐ FILED  ☒ LODGED
**Mar 19 2024**
CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-24-08016-PCT-SMB (ESW) |
| Plaintiff, | **PLEA AGREEMENT** |
| vs. | |
| Moroni Johnson, | |
| Defendant. | |

Plaintiff, the United States of America, and the defendant, MORONI JOHNSON, hereby agree to dispose of this matter on the following terms and conditions:

1. **PLEA**

The defendant will plead guilty to Count 1 of the Information, Conspiracy to Commit Transportation of a Minor for Criminal Sexual Activity, in violation of Title 18, United States Code (U.S.C.), Section 2423(a) and (e), a Class A felony offense.

//
//
//

2. **MAXIMUM PENALTIES**

   a. A violation of 18 U.S.C. § 2423(a) and (e) is punishable by a maximum fine of $250,000, a term of imprisonment of ten years to life, or both a fine and term of imprisonment, and a term of supervised release of five years to life.

   b. According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

   (1) make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

   (2) pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

   (3) serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

   (4) pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013; and

   (5) pay upon conviction an additional $5,000 special assessment pursuant to 18 U.S.C. § 3014(a), unless the Court determines that the defendant is indigent.

   c. The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

3. **AGREEMENTS REGARDING SENTENCING**

   a. <u>Sentencing Agreements</u>. The parties have no agreements as to the defendant's sentence or whether any Specific Offense Characteristics apply to the Sentencing Guidelines calculations.

b. <u>Stipulation: Sex Offender Conditions</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate, and the defendant agrees, to the following sex offender conditions during the term of supervised release: within three days from release from prison, the defendant shall register as a sex offender in accordance with tribal, state, and federal law in any jurisdiction in which he resides, is employed, or is a student, and will provide the supervising probation officer with verification of registration. During the term of supervised release, the defendant shall undergo sex offender treatment and counseling as directed by the probation department and as ordered by the Court. Such treatment may include physiological testing, including clinical polygraph testing. If the probation department, and the Court, in determining the most appropriate sentence, deems it appropriate, the defendant shall submit to a presentence sex offender evaluation pursuant to 18 U.S.C. § 3552(b). Such sex offender evaluation shall be conducted under the standardized conditions set forth by the examiner. Defendant's attorney shall not be present during any part of the examination unless otherwise authorized by the examiner in advance of said evaluation or as otherwise agreed upon between the parties in writing. The parties agree that any statements used in connection with the examination shall not be used in the instant prosecution or in any subsequent federal prosecution of the defendant in the District of Arizona. As a condition of supervised release, the defendant shall cooperate in the collection of a DNA sample as authorized in 18 U.S.C. § 3583(d).

c. Restitution. Pursuant to 18 U.S.C. § 3663, 3663A and/or 2248, the defendant specifically agrees to pay full restitution to all victims in an amount to be determined by the court, but in no event, more than $1,000,000.00 per victim. "Victims" include persons or entities directly or proximately harmed by defendant's "relevant conduct" including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. §1B1.3, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663, 3663(A) or 2248. Pursuant to 18 U.S.C. §§ 3663 and 3664(j)(1), "victims" also include persons or entities (whether private or government: state, federal or tribal) that have paid or costs related to defendant's conduct, including insurance providers and health

care providers (including those such as Medicaid, Medicare and AHCCCS). Even if the victim did not suffer physical injury, the defendant expressly agrees to pay restitution for expenditures and future expenses related to treatment for mental or emotional trauma suffered by the victims. Such expenditures shall include, but are not limited to: mental health treatment, counseling, and in-patient treatment. The defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw the defendant's guilty plea or to withdraw from this plea agreement.

    d.    Assets and Financial Responsibility. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

    e.    Acceptance of Responsibility. If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more,

the United States will move for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

  f. **Non-Binding Recommendations.** The defendant understands that recommendations are not binding on the Court. The defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

**4. AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

  a. The United States Attorney's Office for the District of Arizona agrees not to bring additional charges against the defendant based on information known to the United States and contained in the discovery in this case.

  b. This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**5. COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

  a. If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

  b. If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

### 6. WAIVER OF DEFENSES AND APPEAL RIGHTS

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c) (except for the right to file a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) and to appeal the denial of such a motion). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

### 7. DISCLOSURE OF INFORMATION

a. The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b. Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c. The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1) criminal convictions, history of drug abuse, and mental illness; and

(2) financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

## 8. FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS

a. Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

## 9. ELEMENTS

### Conspiracy

Beginning at a time unknown, but at least from on or about September 4, 2019 through on or about September 13, 2022, in the District of Arizona and elsewhere:

1. There was an agreement between two or more persons to commit a violation of 18 U.S.C. § 2423(a), Transportation of a Minor for Criminal Sexual Activity; and
2. The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

### Transportation of a Minor for Criminal Sexual Activity

Beginning at a time unknown, but at least from on or about September 4, 2019 through on or about September 13, 2022, in the District of Arizona and elsewhere:

1. The defendant or co-conspirator knowingly transported or caused to be transported Jane Does 3, 4, 5, 6, and 7 in interstate commerce;
2. The defendant or co-conspirator did so with the intent that Jane Does 3, 4, 5,

- 7 -

6, and 7 would engage in sexual activity for which any person can be charged with a criminal offense; and

    3.      Jane Does 3, 4, 5, 6, and 7 were under the age of 18 years at the time.

**10.   FACTUAL BASIS**

    a.      The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

> The defendant is the biological father of Jane Does 3, 4, 5, and 6, and he was married to Jane Doe 7's mother and regarded himself as her adopted father. The defendant has known Samuel Rappylee Bateman, lead defendant in *United States v. Samuel Rappylee Bateman*, et. al., CR-22-08092-PCT-SMB, his entire life.
>
> Like Bateman, the defendant is a practicing member of the Fundamentalist Church of Jesus Christ of Latter-Day Saints ("FLDS"), a subset of the fundamentalist Mormon denominations whose members practice polygamy. In 2019, Bateman began to proclaim himself as the new Prophet of the FLDS. At that time, the defendant and Bateman were living in Colorado City, Arizona.
>
> Beginning in 2019, Bateman recruited followers, many of whom became his "wives." There were no legal or formal ceremonies to commemorate the "marriages," but "marriage" signified the beginning of Bateman's sexual relationship with each of his "wives," including his minor "wives."
>
> In June 2019, the defendant and his family moved to Lincoln, Nebraska. Shortly thereafter, Bateman began visiting the defendant in Nebraska and claimed the defendant's two young adult daughters as "wives." Bateman took them back to Colorado City one at a time in 2019 and impregnated them both.
>
> In March 2020, Bateman told the defendant that Jane Doe 6, the defendant's nine-year-old daughter, belonged to Bateman. The defendant told Jane Doe 6 that the Lord wanted her to go with Bateman. In May 2020, Bateman took Jane Doe 6 as a "wife" and drove her from Lincoln, Nebraska to Colorado City, Arizona, with the defendant's consent. Bateman would later complain that Jane Doe 6 wet his bed.
>
> In July 2020, Bateman claimed Moretta Rose Johnson, the defendant's

- 8 -

seventeen-year-old daughter and a co-defendant in the Bateman case, as a "wife." The defendant talked to Moretta and influenced her to go with Bateman. Moretta traveled from Lincoln, Nebraska to Colorado City, Arizona to be with Bateman. The defendant provided a vehicle and money for the trip. Moretta was impregnated by Bateman and gave birth to his child on October 25, 2021.

In the late summer of 2020, Bateman moved to Lincoln, Nebraska with all his "wives," and he quickly moved into the defendant's home. Between August and November 2020, Bateman claimed the remainder of the defendant's underage daughters – Jane Does 3, 4, 5, and 7 – as his "wives." The defendant helped Bateman to take the girls as "wives" by encouraging or directing them to go with Bateman.

Jane Does 3 and 5 were taken as "wives" by Bateman in August 2020. Jane Doe 3 was fourteen years old, and Jane Doe 5 was thirteen years old. Jane Doe 4 was taken as a "wife" by Bateman in September 2020. She was ten years old. Jane Doe 7 was taken as a "wife" by Bateman in October 2020. She was eleven years old.

The defendant knew that Bateman would engage in sexual activity with each girl once they were "married." After Bateman took them as "wives," they began to sleep in the master bedroom with Bateman while the defendant slept in a different room in the same house. The defendant also knew that Bateman would transport his "wives" across state lines to engage in illegal sexual activity. The defendant made interstate travel arrangements for Bateman and his "wives," and he sometimes accompanied them.

In November 2020, in Lincoln, Nebraska, Bateman had the defendant engage in sexual activity in front of Marona Johnson (the defendant's daughter and a co-defendant in the Bateman case) and others so they could learn to sexually please Bateman. Later that month, Bateman coordinated group sexual activity in a hotel room in Colorado Springs, Colorado. The defendant was present and engaged in sexual activity. Seventeen-year-old Moretta Rose Johnson and fourteen-year-old Jane Doe 3 were present and engaged in sexual activity with Bateman. Ten-year-old Jane Doe 6 participated via video call, and she was required to be naked.

That same month, Bateman coordinated more group sexual activity in Lincoln, Nebraska. The defendant was present, along with many of Bateman's "wives," including seventeen-year-old Moretta Rose Johnson and another one of the defendant's teenaged daughters. Bateman wanted to reenact the "washing of the feet" from the Bible. Bateman wore a towel in

- 9 -

an attempt to imitate Jesus. Bateman washed the defendant's feet, then instructed everyone to undress. Bateman tried to penetrate the defendant anally, but was unable to achieve an erection, even when his "wives" (including Moretta) tried to help him. Bateman proceeded to vaginally penetrate Moretta, although he could not stay aroused to complete the act.

In December 2020, in Lincoln, Nebraska, Bateman was able to achieve an erection and anally penetrate the defendant. Many of Bateman's "wives" were present, including Moretta Rose Johnson and Jane Doe 3.

In January 2021, Bateman began to move his "wives" from Lincoln, Nebraska to Colorado City, Arizona. The defendant also moved the remainder of his family to Colorado City, Arizona. Bateman lived together with his "wives" in a single-family home. The defendant lived in a separate home nearby. In February 2021, the defendant declared on a group call (that was recorded and uploaded to YouTube) that he had surrendered all his children to Bateman. He said, "they do belong to Father Samuel. What he chooses to do with them is his business and I rejoice in them."

In November 2021, in Colorado City, Arizona, Bateman instructed some of his male followers, including the defendant, to engage in sexual activity with some of Bateman's "wives" to atone for the male followers' purported sins against Bateman. The defendant had sex with one of Bateman's adult "wives" while Bateman watched and engaged in sexual activity with fourteen-year-old Jane Doe 5. As part of this "atonement," another one of Bateman's male followers had anal sex with twelve-year-old Jane Doe 7 while Bateman watched.

During this time, the defendant supported Bateman financially and supplied provisions to the home where Bateman lived with his "wives." This arrangement continued until Bateman was arrested on federal charges on September 13, 2022.

b. The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

- 10 -

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and

may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

2-7-24
Date

MORONI JOHNSON
Defendant

### APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

2/7/24
Date

MICHAEL ATKINS
Attorney for the Defendant

## APPROVAL OF THE UNITED STATES

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

```
                                    GARY M. RESTAINO
                                    United States Attorney
                                    District of Arizona

                                    DIMITRA    Digitally signed by
                                               DIMITRA SAMPSON
                                    SAMPSON    Date: 2023.12.14 15:10:58
                                               -07'00'
_____         _____
Date                                DIMITRA H. SAMPSON
                                    JILLIAN BESANCON
                                    RYAN POWELL
                                    Assistant U.S. Attorneys
```

## ACCEPTANCE BY THE COURT

```
_____         _____
Date                                HONORABLE SUSAN M. BRNOVICH
                                    United States District Judge
```